IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph Fini and Tina Fini, h/w, : 
                    Appellants :
                                :
          v.                    :  No. 16 C.D. 2023
                                :  Argued: November 6, 2023
Park Place of East Bradford     :
Community Association           :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT                    FILED:  February 13, 2024

Joseph and Tina Fini (Unit Owners) appeal an order of the Court of Common Pleas of Chester County (trial court) holding Unit Owners liable to Park Place of East Bradford Community Association (Association) for legal fees incurred by the Association in the enforcement of its parking rules. On appeal, Unit Owners argue that the trial court erred because the Association's governing documents do not authorize it to recover legal fees from Association members except in specific circumstances, which did not include the instant dispute over parking. We affirm the trial court.

## Background

Unit Owners formerly owned property at 707 McCardle Drive in West Chester, Pennsylvania, located in Park Place of East Bradford (Park Place), a planned community under the Uniform Planned Community Act (Planned Community Act).[1] Park Place is governed by a declaration, bylaws, and rules and regulations, which, *inter alia*, established the Association to carry out the provisions

---

[1] 68 Pa. C.S. §§5101-5414.

of these governing documents. The Association has engaged PENCO Management, Inc. (PENCO), as the Association's property manager.

In August 2019, the Association's Board of Directors (Board of Directors or Executive Board)[2] sent a letter to all unit owners in Park Place that, beginning September 1, 2019, the Association would start enforcing the Association's parking rules. Those rules require unit owners to park their vehicles in the unit's garage, driveway, or assigned space.[3] The letter explained that vehicles parked on the street were impeding access needed by emergency vehicles, constituting a danger to public safety.

In November 2019, PENCO sent Unit Owners a "Notice of a Fine" in the amount of $50.00 for violating the Association's parking rules by parking on the street instead of in their assigned spot. *See* Unit Owners' Complaint ¶10 and Exhibit "E"; Reproduced Record at 207a, 294a (R.R.___). Subsequently, PENCO withdrew the fine because it determined that the fine had not been imposed in accordance with the Association's procedures for enforcement of Association rules.[4]

---

[2] The Declaration and bylaws establish an Executive Board, comprised of three members of the Association, to manage the Association. The bylaws use the terms Executive Board and Director interchangeably. The resolution establishing the Association's enforcement procedures uses the term Board of Directors instead of Executive Board. In the end, all the relevant actions were done on behalf of the Association.

[3] The parking rules provide, in part, as follows:

> Unit Owners shall park vehicles in the Unit's garage, in the driveway located immediately adjacent to their Unit, or in parking spaces which the Association may designate for each individual Unit. The parking spaces within the parking areas adjacent to roadways not designated for use by a Unit are intended primarily for visitor parking and shall be used by Unit Owners on a temporary basis only.

Park Place Planned Community Declaration (Declaration), Article VI, §6.1.4; Reproduced Record at 226a (R.R. __).

[4] The Board of Directors adopted a Resolution providing that the Association "will enforce the Declaration and any Rules and Regulations" using the following procedure:

2

Thereafter, by letters of January 28, 2020, February 26, 2020, and April 9, 2020, the Association notified Unit Owners that they had violated the Association's parking rules by parking in a "non-designated area," *i.e.*, on the street. Each notice was described as a first offense. Unit Owners appealed the February 26, 2020, violation notice, but the Board of Directors did not hold a hearing on their appeal.

---

a.  First Offense: Letter of warning and fifteen (15) day compliance/remediation period.

b.  Second Offense: Written notice to be sent by regular mail and certified mail with return receipt requested and seven (7) day compliance/remediation period. If the violation is not remedied within the seven (7) day compliance/remediation period, the Board shall be authorized to impose a Fifty Dollar ($50.00) fine.

c.  Third Offense: Letter to be sent by regular mail and certified mail with return receipt requested and three (3) day compliance/remediation period. If the violation is not remedied within the three (3) day compliance/remediation period, the Board shall be authorized to impose a One Hundred Dollar ($100.00) fine.

d.  Fourth Offense: Letter to be sent by regular mail and certified mail with return receipt requested and three (3) day compliance/remediation period. If the violation is not remedied within the three (3) day compliance/remediation period, the Board shall be authorized to impose a One Hundred Fifty Dollar ($150.00) fine and other action to be determined by the Board of Directors.

e.  Beyond the Fourth Offense, fines will continue to double on a monthly basis until compliance or remediation is implemented by the offending party. Nothing herein shall, however, limit the right of the Board of Directors to pursue all available legal remedies. After the Fourth Offense, each day that a violation continues shall constitute a separate violation.

f.  Appeals by offending parties may be submitted in writing to the Board of Directors within ten (10) days of receipt of notice of violation . . . . Appeals shall be heard by the Board of Directors within thirty (30) days after submission of the appeal.

Association Resolution Establishing Enforcement Procedures (2005) (Enforcement Resolution) at 1-2; R.R. 279a-80a.

In April of 2020, Unit Owners listed their unit for sale. On May 14, 2020, PENCO sent Unit Owners a notice that the legal fees incurred by the Association in the amount of $1,144.45[5] to address their parking violations had been assessed to their account, under authority of Section 8.16 of the Declaration.[6] When Unit Owners objected to the assessment, the Executive Board responded that its authority for the assessment was found in Section 15.2 of the Declaration.[7]

Unit Owners then instituted the instant action in the trial court seeking declaratory and injunctive relief so that the sale of their unit could close. The trial court granted the injunction, placing the amount of contested legal fees into escrow. On March 24, 2022, the trial court conducted a trial on the disposition of the escrowed funds. Both parties presented testimonial and documentary evidence.

On behalf of Unit Owners, Richard Hicks, former fire marshal for East Bradford Township, testified that the Association's property manager requested a

---

[5] The legal invoices in question were in the amount of $465.45, $646.25, and $68.75. R.R. 915a.

[6] It states, in part:

> *All expenses of the Executive Board in connection with any actions or proceedings*, including court costs and attorney's fees and other fees and expenses and all damages, liquidated or otherwise, asserted by the Association *in collecting Assessments*, Special Assessments or Limited Common Assessments *shall be added to and deemed a Limited Common Assessment* and the Association shall have a lien for all of the same, *upon the defaulting Unit*.

Declaration, Article VIII, §8.16; R.R. 233a (emphasis added).

[7] Section 15.2.A states as follows:

> *Breach of any of the covenants* contained in the Declaration or the Bylaws and the continuation of any such breach *may be enjoined, abated or remedied by appropriate legal proceedings* by any Unit Owner, *by the Association* or the successors-in-interest of the Association, or by the Township. *Any judgment rendered in any action or proceeding pursuant hereto shall include the amount* of any delinquent payment, interest thereon, costs of collection, including attorney's fees, court costs and penalty charges.

Declaration, Article XV, §15.2.A; R.R. 245a (emphasis added).

4

safety assessment of specific streets in the community. Hicks did the inspection on October 22, 2021, and reported on his findings in a letter to the Association. His letter advised that overnight parking on McCordle Drive, where it passes Unit Owners' unit, would constitute a danger to public safety. Unit Owners' Trial Exhibit 9; R.R. 880a. In his testimony, Hicks confirmed the findings and recommendations in his letter. Notes of Testimony, 3/24/2022, at 20 (N.T. __); R.R. 35a.

In her testimony, Tina Fini acknowledged that she and her husband regularly parked on McCardle Drive in front of their home. In 2019, the Association notified her that it would begin enforcing the Association's parking rules. Then, in October 2019, she received a parking violation notice. Fini testified that she contacted Leslie Gamber, who worked for PENCO. Gamber informed Fini that because the Association had not followed its enforcement procedures, the fine would be rescinded.

Fini testified that, in January 2020, she attended a meeting of the Board of Directors to discuss street parking. The Board's president, Edward Nathan, stated that on-street parking was prohibited on either side of McCardle Drive. Fini responded that there was no such sign on the side of the street where she and her husband parked. After this meeting, Fini continued to receive more parking violation notices. All were first-offense notices and did not impose a fine. Fini requested a hearing on the alleged parking violations, but it did not take place.

Fini also testified that in conjunction with the sale of their unit, she requested a certificate of resale from the Association. In response, the Association reminded her of an assessment for the legal fees the Association had incurred in conjunction with the parking dispute. Fini objected because the Association had never instituted an action against Unit Owners for their alleged parking violations.

5

On cross-examination, Fini agreed that Unit Owners had not been assigned on-street parking spots and that they had been advised that the Association's existing "no parking" sign covered both sides of the street. Nevertheless, she believed that without a "no parking" sign on the side of the street where she parked, her parking choice was permissible.

Leslie Gamber testified that she sent multiple parking violation notices to Unit Owners. Other than the fine of November 2019, which was subsequently withdrawn, there were no other fines imposed on Unit Owners. Gamber explained that in February of 2020 when Unit Owners advised the Board of Directors that they "were going to get an attorney," the Board engaged counsel. N.T. 101; R.R. 116a. When asked if the attorney had been hired to enforce the Association's rules, Gamber testified: "Not specifically to enforce, but to help the Board with this matter." N.T. 104; R.R. 119a.

Edward Nathan, the Board's President, testified that the Association retained counsel when Unit Owners threatened legal action. Nathan explained that the enforcement of the parking rules required legal representation because Unit Owners "flat out said [they were] not going to park by the rules. There [were] no other options." N.T. 128; R.R. 143a. Accordingly, the Association engaged counsel, who sent a letter to Unit Owners warning that continued violations of the Association's parking rules would be deemed deliberate.

With regard to enforcement, Nathan testified the Association sent several violation notices to Unit Owners, but it did not fine them. The Association consulted with counsel about how to compel Unit Owners to adhere to the parking rules. However, once Unit Owners stated that they were leaving, the Association sought only "to get back" the funds spent on counsel. N.T. 144; R.R. 159a. In May

6

of 2020, the Association sent letters to Unit Owners advising them that the legal fees incurred by the Association in relation to their parking violations would be assessed to their account.

## Trial Court Decision

After its trial, the trial court made the following pertinent findings of fact:

7. Each plaintiff owned their own vehicles and testified that they regularly parked on the street in front of their home.

\* \* \* \*

11. It is undisputed that no parking spaces were ever assigned to any Unit at Park Place, including [Unit Owners'] unit.

12. No spaces were allocated to [Unit Owners] other than in their garage and/or driveway.

\* \* \* \*

28. On January 28, 2020, the Board issued a notice of first offense to [Unit Owners]. []

29. Thereafter, on February 10, 2020, [Unit Owners] sent an email to PENCO stating, in part, "At this point, should we receive another warning/fine, all will be appealed and the attorneys can handle all in court . . . ." []

30. Edward Nathan, president of the Board during the relevant time[ ]period, testified that the Board had concerns regarding the continued failure to abide by the rules and regulations as well as the threat of legal action.

31. Accordingly, the Board hired Attorney Holly Setzler to assist the Board.

32. On February 14, 2020, Attorney Setzler wrote to [Unit Owners] reiterating the language of the governing documents and notifying them that any "violations observed from this day forward will be considered deliberate and subject to the fining and enforcement protocol." []

7

33.  *Attorney Setzler only handled this discrete issue for the Board.*

34.  On February 26, 2020, the Board issued another notice of first offense to [Unit Owners].  []

35.  On March 5, 2020, [Unit Owners] appealed from the February 26, 2020 notice.  []

* * * *

37.  No hearing occurred with respect to the appeal.

38.  On April 9, 2020, another notice of first offense was sent to [Unit Owners].  []

39.  No second offense notice was ever sent.

40.  No fines were ever imposed (disregarding the erroneously entered and subsequently removed $50 fine).

* * * *

45.  [Unit Owners] listed their unit for sale around April of 2020.

46.  The Board ceased its efforts to obtain compliance and chose to attempt to recoup attorney['s] fees spent in its efforts to enforce the Declaration and Rules and Regulations regarding parking.

47.  On May 14, 2020, PENCO sent a letter to [Unit Owners] advising them of the legal fees incurred and assessed to their account in the amounts of $465.45, $646.25, and $68.75.  []

48.  The May letter references Section 8.16 of the Declaration as a basis for the legal fees.

* * * *

51.  [Unit Owners] sent a letter in response on May 26, 2020[,] contesting the legal fees.

52.  On May 28, 2020, the Board responded and cited Section 15.2 of the Declaration as well as Section 1, Paragraph D of the Rules.  []

Trial Court Op. at 2-7 (emphasis added).

The trial court concluded that Unit Owners were not permitted to park on either side of McCardle Drive, regardless of the placement of the "no parking" sign. Section 6.1.4 of the Declaration stated that "Unit Owners shall park vehicles in the Unit's garage, in the driveway located immediately adjacent to their Unit, or in parking spaces which the Association may designate for each individual Unit." Trial Court Op. at 8 (quoting Declaration Article VI, §6.1.4). Unit Owners did not have a designated parking space on the street. In August 2019, Association notified Unit Owners of their parking violation. This was repeated on October 24, 2019; November 13, 2019; January 28, 2020; February 26, 2020; and April 9, 2020. Nevertheless, Unit Owners chose to continue parking on the street.

Notwithstanding this clear violation of the parking rules, the Association did not initiate a proceeding in accordance with its Enforcement Resolution for addressing violations of rules and regulations. Nor did it hold a hearing on Unit Owners' appeal of the parking violation notice. This left the question, then, of whether the Association could recover its legal fees incurred in respect to the "discrete issue" of Unit Owners continuing parking violations, when no fine was issued, and no court action was initiated to enforce the parking rules.

The trial court concluded that Section 8.16 of the Declaration authorized a lien against a unit owner for legal fees incurred in the collection of assessments. Declaration §8.16; R.R. 233a. Further, the Planned Community Act authorized the Association's recovery of legal fees incurred "in connection with collection of any sums due to the association by the unit owner or enforcement" of the declaration, bylaws, rules or regulations in the form of an assessment. 68 Pa. C.S. §5315(a). Likewise, the Association's rules and regulations authorized the

9

recovery of legal fees incurred in the enforcement of its Declaration, bylaws, or rules and regulations. Declaration §15.2.A; R.R. 245a.

The trial court found that the legal fees in question were incurred in connection with the enforcement of the Association's parking regulations. As such, the Planned Community Act, the Declaration, and Association rules authorized the Association's assessment on Unit Owners for these legal fees. 68 Pa. C.S. §5315(a).[8]

Unit Owners appealed the trial court's decision to this Court.

## Appeal

On appeal,[9] Unit Owners raise two issues. First, they argue that the trial court erred in finding that the Association was entitled to assess them for legal fees under the authority of Section 5315(a) of the Planned Community Act. Second, they argue that the trial court's holding has denied them the due process guaranteed by the Planned Community Act as well as the Association's Declaration, bylaws, and rules.

---

[8] Unit Owners filed a motion for reconsideration and post-trial relief, both of which the trial court denied on December 5, 2022. Additionally, the Association had submitted a petition for attorney's fees pursuant to 68 Pa. C.S. §5315(g) (relating to costs and attorney's fees for the prevailing party). Originally, the petition was to be argued together with Unit Owners' motion for reconsideration and post-trial relief, but the trial court determined that an evidentiary hearing was needed on the Association's petition, which then was scheduled for January 6, 2023. Trial Court Order, 12/5/2022, at 1. It appears that the hearing was stayed pending resolution of this instant matter. *See* Association Brief at 24.

[9] "When reviewing the decision of a trial court in a non-jury trial, we must determine whether the findings of the trial court are supported by [substantial] evidence and whether the trial court committed an error of law." *The Ridings at Whitpain Homeowners Association v. Schiller*, 811 A.2d 1111, 1113 n.2 (Pa. Cmwlth. 2002).

10

**Applicable Law**

We begin with a review of the legal principles applicable to a planned community's authority to enforce its rules and regulations and to recover its costs therefor.

The Planned Community Act provides that a homeowners' association can recover its costs of collection or enforcement from a unit owner by an assessment. It states, in relevant part, as follows:

> Unless the declaration otherwise provides, fees, charges, late charges, fines and interest charged under section 5302(a)(10), (11) and (12) (relating to power of unit owners' association) and *reasonable costs and expenses of the association, including legal fees, incurred in connection with collection of any sums due* to the association by the unit owner or *enforcement of the provisions of the declaration, bylaws, rules or regulations against the unit owner are enforceable as assessments under this section . . . .*

68 Pa. C.S. §5315(a) (emphasis added).

The Association's Declaration contains several provisions that authorize its Executive Board to pursue a breach of the Association's rules and regulations. It states:

> The violation of any Rules and Regulations adopted by the Executive Board, the breach of any provision contained in the Bylaws or the breach of any provision of this Declaration or the [Planned Community] Act by any Unit Owner or any tenant of such Unit Owner, shall give the Executive Board the right, in addition to any other rights to which it may be entitled, to enjoin, abate or remedy by appropriate legal proceedings, either at law or in equity, the continuance of any such breach.

Declaration, Article VII, §7.3; R.R. 230a-31a. To pursue a remedy for breach, the Executive Board has been authorized

11

> [*t*]*o engage the services of any persons* (*including*, but not limited to, accountants and *attorneys*) deemed necessary by the Executive Board at such compensation as is deemed reasonable by the Executive Board, in the operation, repair, maintenance and management of the Property, or *in connection with any duty, responsibility or right of the Executive Board and to remove, at any time, any such personnel*.

Declaration, Article VII, §7.1(b); R.R. 230a (emphasis added).

The Association bylaws also authorize enforcement of the Declaration, the bylaws or the Association's rules. The bylaws authorize the Executive Board to

> (e) commence and maintain actions and suits to restrain and enjoin any breach or threatened breach of the Declaration, these Bylaws or the Rules and Regulations, and to enforce, by mandatory injunction or otherwise, all of the provisions thereof;
>
> (f) *contract and pay for*, or otherwise provide for, the services of architects, engineers, *attorneys*, accountants and such other professional and non-professional services as the Association deems necessary or desirable[.]

Association Bylaws, Article VII, §1(e), (f); R.R. 267a (emphasis added).

Finally, the Association parking rules provide for the imposition of attorney's fees on unit owners. Rule V states as follows:

> *Unit owners*, tenants, and/or residents *found to be in violation of the Rules and Regulations concerning parking and vehicles, will be responsible for all expenses, including, but not limited to*: (1) all costs for towing, and (2) *attorney's fees incurred by the . . . Association in seeking enforcement of the Rules and Regulations* and will be responsible for any of their guests found in violation of these Rules and Regulations . . . .

Association Rules and Regulations §V.G.2; R.R. 287a-88a (emphasis added).

With this background, we consider Unit Owners' challenge to the Association's assessment for legal fees incurred in seeking enforcement of its parking rules.

12

**Planned Community Act**

In their first issue, Unit Owners challenge the trial court's construction of, and reliance upon, the Planned Community Act. They contend that to recover legal fees, an association must incur them "'in connection *with collection of any sums due to* the association by the unit owner.'" Unit Owners Brief at 13 (quoting 68 Pa. C.S. §5315(a)) (emphasis added). Unit Owners argue that they did not owe any "underlying sums" such as parking fines, and, thus, Section 5315(a) did not authorize the Association's assessment lien.

The Association responds that Unit Owners point only to the first clause of Section 5315(a), relating to "collection." The second clause provides for the recovery of legal fees incurred in connection with "enforcement of the provisions of the declaration, bylaws, rules or regulations." 68 Pa. C.S. §5315(a). The second clause is the one that authorized the Association to recover its reasonable legal fees, "enforceable as assessments." 68 Pa. C.S. §5315(a).

As noted, legal fees "incurred in connection with . . . *enforcement*" of an association's rules "*are enforceable as assessments under this section*." 68 Pa. C.S. §5315(a) (emphasis added). This appeal turns on the meaning of "in connection with enforcement." 68 Pa. C.S. §5315(a). The Planned Community Act does not define enforcement, but the common understanding of enforcement is "[t]he act or process of compelling compliance with a law, mandate, command, decree, or agreement." BLACK'S LAW DICTIONARY 569 (8th ed. 2004).

Here, the Association hired counsel to assist in the enforcement of the parking rules against Unit Owners. In that regard, counsel sent a letter to Unit Owners informing them "violations observed from this day forward will be considered deliberate and subject to the fining and enforcement protocol."

13

Supplemental Reproduced Record at 13b (S.R.R. __). This letter constitutes an "act or process" to compel compliance with the parking rules, *i.e.*, an act of "enforcement" within the meaning of Section 5315(a). The Association also engaged counsel because Unit Owners threatened legal action if the Association continued to send Unit Owners parking violation notices. The Board's president testified that the Association sought advice from Attorney Setzler "about how [it] could proceed to get [Unit Owners] to comply[]" with the parking rules. N.T. 143; R.R. 158a. When the Association learned that Unit Owners were selling their property, Unit Owners' compliance with parking rules ceased to be "a high priority." *Id.*

Unit Owners contend that the Association's legal fees were not incurred "in connection with enforcement" of the parking rules. Despite the letter sent by the Association's counsel to Unit Owners that subsequent violations of the parking rules would be subject to enforcement, the Association continued to issue "First Offense" notices to Unit Owners. When Unit Owners appealed the February 26, 2020, "First Offense" notice, the Board of Directors did not convene a hearing within 30 days as required by the Association's own enforcement procedures, and no fines, or "sums owed," were ever assessed. Unit Owners argue that because the Association did not institute a formal enforcement action against Unit Owners, the legal fees in dispute were not incurred "in connection with enforcement" of the parking rules. We disagree.

The Association engaged counsel to advise it on Unit Owners' conduct. The trial court found, as fact, that Attorney Setzler "only handled this discrete issue for the Board." Trial Court Op. at 5, Finding of Fact ¶33. We reject Unit Owners' narrow interpretation of "enforcement" as requiring a formal proceeding under the

14

Enforcement Resolution or a judicial action. The phrase "in connection with" is broad enough to encompass legal consultation in advance of active litigation. Thus, it covers the fees incurred by the Association to seek advice on how to have Unit Owners comply with the parking rules and to try to resolve the matter short of litigation. We discern no error in the trial court's application of Section 5315(a) of the Planned Community Act to include the legal fees incurred by the Association "in connection with" its effort to compel Unit Owners to obey the parking rules.

Unit Owners argue, alternatively, that the Planned Community Act did not apply here because the Association's Declaration did not implement Section 5315(a). The Declaration does not contain an express provision that the Association may assess a unit owner for legal fees incurred "in connection with enforcement of the provisions of the declaration, bylaws, rules or regulations." 68 Pa. C.S. §5315(a). Absent such a provision in the Declaration, Unit Owners argue that the Planned Community Act did not authorize the assessment in question.

We reject Unit Owners' proffered construction of the Planned Community Act. Section 5315(a) is self-executing and required no further action by an association to be efficacious. *See Success Against All Odds v. Department of Public Welfare*, 700 A.2d 1340, 1351 (Pa. Cmwlth. 1997) ("Self-executing statutes are those which are mandatory in nature and require no further legislative action in order to become effective."). Section 5315(a) authorizes a planned community to recover legal fees unless the declaration "otherwise provides." 68 Pa. C.S. §5315(a). Here, the Association's Declaration does not "otherwise provide." It does not establish an exemption from Section 5315(a) or forbid the Association from imposing an assessment for legal fees incurred "in connection with enforcement" of the Association's rules. To the contrary, the Declaration contemplates their

15

recovery. Declaration, Article XV, §15.2.A; R.R. 245a. Further, the Association's rules make unit owners who violate the parking rules "responsible for all expenses . . . including attorney's fees incurred by the . . . Association in seeking enforcement" of the rules. Association Rules, §V.G.2; R.R. 287a-88a. Stated otherwise, the Association's Declaration did "not otherwise provide" that the Association could not assess Unit Owners for legal fees incurred in connection with their parking violations.

Section 5315(a) allows an association to collect the expenses it has incurred "in connection with enforcement" of the declaration, bylaws, rules, or regulations from a unit owner. In this context, "enforcement" covers any activity up to, and including, formal litigation. Here, as found by the trial court, the Association's assessed legal fees were incurred solely to address Unit Owners' refusal to abide by the Association's parking rules. Section 5315(a) is self-executing and requires no further action in order to be used by a planned community. To the contrary, the homeowners' association must take affirmative steps to prevent its board from exercising the authority in Section 5315(a) by "otherwise" providing in its declaration.

We conclude, and hold, that the Association was entitled to recover the legal fees incurred "in connection with" enforcement of its parking rules in the form of an assessment. 68 Pa. C.S. §5315(a).

### Due Process

In their second issue, Unit Owners argue that the Association's imposition of a lien for legal fees violated their due process rights guaranteed by the Declaration and the Enforcement Resolution.[10] The Enforcement Resolution

---

[10] *See supra* n.3 for text of Enforcement Resolution.

16

provides that unit owners may appeal a notice of violation to the Board of Directors, which shall hear any appeals within 30 days after submission of the appeal. Enforcement Resolution ¶2(f); R.R. 279a-80a.

The Enforcement Resolution governs violations of rules and regulations and not legal fee assessments. Unit Owners do not cite any provision in the Planned Community Act, the Declaration, or the other governing documents that requires a hearing before being assessed the costs of the Association's legal fees incurred in connection with enforcement of the parking rules. To the contrary, by operation of law, the Association has a lien against Unit Owners for legal fees, which have been held to have been incurred "in connection with enforcement" of the Declaration or rules and regulations. 68 Pa. C.S. §5315(a). The trial court found, as fact, that the Association's lien for legal fees was incurred in connection with enforcement of the parking rules.

Unit Owners did not receive a hearing from the Board of Directors on the appeal of their parking violation notices. This did not implicate due process because they were never fined.

On the validity of the Association's special assessment and lien, Unit Owners received due process in the instant judicial proceeding. A hearing is not required under either the Declaration or the Association's other governing documents to authorize the Association to recover legal fees "incurred in connection with . . . enforcement . . . against the unit owner" in the form of an assessment. 68 Pa. C.S. §5315(a).

We reject Unit Owners' due process argument.

**Conclusion**

Section 5315(a) of the Planned Community Act allows the Association to collect the expenses it incurred "in connection with . . . enforcement of the provisions of the declaration, bylaws, rules or regulations against the unit owner[.]" 68 Pa. C.S. §5315(a). The legal fees incurred by the Association were so incurred, and the Association was not required to provide Unit Owners with a hearing prior to placing a lien against Unit Owners for its Section 5315(a) assessment. For these reasons, we affirm the trial court's decision.

_____
MARY HANNAH LEAVITT, President Judge Emerita

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph Fini and Tina Fini, h/w,  : 
                            Appellants  : 
                                         : 
                        v.  :      No. 16 C.D. 2023
                                         : 
Park Place of East Bradford  : 
Community Association  : 

**O R D E R**

AND NOW this 13th day of February, 2024, the decision of the Chester County Court of Common Pleas dated December 5, 2022, in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita